**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 06-219-JBC**

**LINDA KAY RITCHIE,**                                                                    **PLAINTIFF,**

**V.**                               **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                              **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

The plaintiff, Linda Kay Ritchie, brought this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of an administrative decision of the

Commissioner.  The court, having reviewed the record and being otherwise

sufficiently advised, will deny the plaintiff's motion for summary judgment (DE 12)

and grant the Commissioner's motion for summary judgment (DE 13).

**I.      Background**

The plaintiff alleges that she became disabled on February 1, 2004, due to

"depression, bipolar II disorder, social phobia versus general anxiety disorder,

nerves, dependent and avoidant features, and Hepatitis C."[1]  (DE 12-2 at 1.)  A

formal hearing on her application was held on November 8, 2005, before an

administrative law judge ("ALJ") in Hazard, Kentucky.  The ALJ denied plaintiff's

application, a decision which was upheld by the Appeals Council, and the plaintiff

---

[1]  The plaintiff also filed applications for disability in 1995 and 2002, both of
which were unsuccessful.

then filed this application for judicial review.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *Id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even if the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform his past relevant work, whether significant numbers of other jobs exist in

2

the national economy which he can perform.  *See Preslar v. Sec'y of Health &*
*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.   The ALJ's Determination

At Step 1, the ALJ found that the plaintiff had not engaged in substantial
gainful activity since the alleged onset of disability.  At Step 2, the ALJ found that
the plaintiff's impairments should be considered "severe" based on the standards
set forth in 20 C.F.R. § 404.1520(c), but at Step 3, the ALJ found that the
plaintiff's impairments "do not meet or medically equal one of the listed
impairments in Appendix 1, Subpart P, Regulation No. 4."  (R. at 24.)  At Step 4,
the ALJ found that the plaintiff has no past relevant work experience.  At Step 5,
the ALJ found the plaintiff "is still functionally capable . . . [and] could be expected
to make a vocational adjustment to work that exists in significant numbers in the
national economy."  *Id.*  A vocational expert testified at the hearing.  *Id.* at 17.

## III.   Analysis

On appeal, the plaintiff claims that the record contains medical examinations
which took place before the alleged onset of disability at issue in this most recent
application for benefits.  According to the plaintiff, the existence of these
examinations requires a remand for at least three reasons.  First, the plaintiff argues
that the mere presence in the record of this previous medical evidence constitutes a
de facto reopening of her previous applications, which is itself sufficient legal error
to justify a remand.  Second, the plaintiff claims that the ALJ's decision was

3

tainted because he expressly and improperly considered some of these previous examinations in his decision, and she argues that without these previous examinations, the ALJ's decision is not supported by substantial evidence.  Third, the plaintiff claims that the ALJ's credibility findings were tainted by these previous examinations, and she argues that more recent evidence undercuts his credibility findings.  Thus, the plaintiff concludes that the ALJ's decision should be remanded under sentence four of 42 U.S.C. § 405(g).  These arguments will be addressed separately below.

### A.   Does the Mere Presence of Prior Examinations in the Record Compel Remand?

Although the ALJ recognized that the plaintiff's previous applications were "administratively final and binding[,]" *see* R. at 17, the plaintiff points out that the first five medical exhibits in the record were generated in Ms. Ritchie's 2002 application, and that the ALJ expressly relied upon at least two of these previous exhibits in his decision.  Citing *Crady v. Secretary of Health and Human Services*, 835 F.2d 617, 620 (6th Cir. 1987), the plaintiff claims that the ALJ's consideration of the previous examinations constituted a de facto reopening "of at least Ms. Ritchie's 2002 application[,]" and the plaintiff argues that "this reopening is sufficient legal error" to compel a remand.  (DE 12-2 at 20.)

Requests to reopen prior proceedings are generally filed by *claimants or plaintiffs* in Social Security cases when they have failed to seek immediate review of the denial of a previous claim.  *See, e.g.*, *McCoy v. Chater*, 81 F.3d 44, 45 (6th

4

Cir. 1995) (denying a request to reopen a previous denial of disability benefits from which "no immediate review was sought"); *Crady*, 835 F.2d at 620 (noting that "the regulations also provide for the reopening of prior determinations otherwise final because of failure to appeal").  After twelve months have passed, ALJs are instructed not to reopen previously closed claims absent a showing of good cause, fraud, or other significant error, *see* 20 C.F.R. § 404.988(b), (c), and an ALJ's decision not to reopen a prior claim is "only subject to review in the district court for constitutional claims[,]" *see McCoy*, 81 F.3d at 45.  Therefore, the plaintiff's claim that the ALJ in this case somehow "de facto reopened" her prior denials – and, in so doing, committed legal error worthy of a remand – is, therefore, at best a novel argument.

It is also an argument unsupported by legal authority.  The plaintiff's motion for summary judgment cites only *Crady* to support this argument, but *Crady* actually seems to compel the opposite conclusion.  As in this case, in *Crady* the Sixth Circuit considered an appeal from the denial of a third application for disability benefits; unlike this case, in *Crady* the third application for disability benefits asserted the same alleged onset date of disability as the previous applications.  835 F.2d at 619-20.  Although the ALJ's decision in *Crady* made "no reference to the prior adverse determinations, d[id] not refer to *res judicata*, and conclude[d] that there was no period of disability subsequent to the claimed onset date" presented in the third application, the Sixth Circuit nevertheless concluded that it "appears

obvious that the ALJ reopened the prior application, *as he may do even though there is no express statement that he has done so*." *Id.* at 620 (emphasis added). Had the ALJ not effectively reopened the claimant's prior applications in *Crady*, "disability benefits could not have been awarded with respect to any period prior to twelve months before the filing of the [third] application[,]" and the Sixth Circuit used this opportunity to make it clear that "[w]hen a previous application is reopened, benefits may be awarded retroactively based on the date of the original application." *Id.* at 619, 620.

In other words, *Crady* holds that an ALJ may reopen a case, subject to the strict standards imposed by the regulations, in order to ensure that a deserving claimant does not forfeit benefits to which she would otherwise be entitled, but for prior technical errors. But *Crady* says nothing about reversing a denial of benefits because an ALJ considered evidence submitted in connection with prior unsuccessful applications. In fact, the Sixth Circuit in *Crady* ultimately affirmed the judgment of the district court which dismissed a complaint seeking review of an ALJ's denial of benefits. Therefore, *Crady* provides no support for the novel argument advanced by the plaintiff in this case.

As the Commissioner points out, "even if the court found that the ALJ de facto reopened the Agency's April 2003 determination on Plaintiff's October 2002 application, that finding of reopening is of no consequence" to her current claim because both of her prior applications were *denied*. (DE 13 at 8.) Put another

6

way, had the ALJ reopened the plaintiff's prior denied applications – and the court need not and does not reach this issue – such a reopening could only have *helped* the plaintiff by potentially making her eligible for disability benefits over a longer period.  Accordingly, the court finds that the inclusion of the plaintiff's prior examinations in the record, regardless of whether this inclusion constituted a de facto reopening of the plaintiff's prior applications, is not, in and of itself, a legal error compelling remand under sentence four of 42 U.S.C. § 405(g).

**B.    Is the ALJ's Decision Supported by Substantial Evidence?**

The plaintiff also argues, without citation, that "the ALJ's reliance on 2003 medical exams and assessments to deny a 2004 SSI application" reveals that the ALJ's decision "is unsupported by substantial evidence . . . ."  (DE 12-2 at 21.) The Commissioner admits that the ALJ did expressly consider some of the plaintiff's previous examinations, "including a March 2003 consultative examination with Dr. Rita A. Ratliff, an April 2003 psychological consultative examination with Robert J. Fitz, Ph.D., and a State Agency medical expert assessment completed in April 2003."  (DE 13 at 8-9 (citing R. at 19).)  Nevertheless, without conceding that the ALJ improperly considered the plaintiff's prior examinations, the Commissioner points out that the ALJ's decision is based on substantial evidence drawn solely from the plaintiff's most recent application for disability benefits.

For example, on August 6, 2004, a state psychologist found that although the plaintiff had "mild deficiencies in activities of daily living" and "moderate

7

deficiencies in social functioning . . . and concentration[,]" there was "no evidence
of decompensation in work or work-life settings . . . ."  (R. at 19.)  This finding
was confirmed on October 6, 2004, when another state psychologist found that
there was "no evidence of decompensation in work or work-like settings . . . ."  *Id.*
at 20.  In addition, on September 13, 2004, a physician at the clinic where the
plaintiff received mental health treatment found that she had "fair to good ability to
do work-related mental activities."  *Id.*  Finally, on October 13, 2004, a state
physician reviewed the plaintiff's record and found that the plaintiff's alleged
physical impairments were less than severe.  *Id.*  Having reviewed the ALJ's
decision and the record, including these examinations, the court finds that the
ALJ's decision was supported by substantial evidence that arose after the most
recent alleged onset date of the plaintiff's disability.

> ### C.   Are the ALJ's Credibility Findings Grounds for Remand?

The plaintiff also suggests that the ALJ's unfavorable credibility findings are
grounds for remand, in part because they were improperly based on the plaintiff's
previous medical examinations, and in part because there are inaudible gaps in the
transcript of the plaintiff's hearing before the ALJ.  In the absence of detailed
corroborating medical evidence to the contrary, the court generally defers to the
ALJ's assessment of credibility.  *Blacha v. Sec'y of Health and Human Servs.*, 927
F.2d 228, 230-31 (6th Cir. 1990).

Contrary to the plaintiff's suggestions, the court finds that the ALJ's

credibility findings were supported by substantial evidence that arose after the most recent alleged onset date of the plaintiff's disability.  For example, in reaching his credibility findings, the ALJ recognized that the plaintiff had normal mental examinations in July and August of 2004.  (R. at 21.)  The ALJ also took note of the plaintiff's daily activities, such as performing household chores, visiting her family, watching television, shopping, and reading.  *Id.*  The ALJ also recognized that the plaintiff's behavior was "nearly normal" even when she was admitted for medical care.  *Id.*  Therefore, the ALJ found that the plaintiff "has overstated the severity and frequency of her symptoms and limitations."  *Id.*  Accordingly, because these findings were supported by substantial evidence in the record arising after the onset date of this most recent alleged disability, and because the plaintiff has not provided detailed corroborating medical evidence to the contrary, the court will defer to the ALJ's credibility assessment.

The court also finds that the inaudible gaps in the transcript of the hearing before the ALJ do not require a remand.  The court recognizes that the presence of these inaudible gaps in hearing transcripts has recently become a frequent subject of litigation, and the court also recognizes that in some cases, the presence of extensive gaps may be problematic.  But this is not such a case.  After reviewing the transcript of the hearing, the court finds that there are only about ten short inaudible gaps, and the court further finds that in each instance, the speaker's meaning is clear despite the gap in the transcript.  *See* R. at 303, 304, 307, 308,

9

313, 316, 317, 318.  Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 12) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (DE 13) is **GRANTED**.

Signed on March 13, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY